UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
(at Bowling Green)

| | |
|---|---|
| UNITED STATES OF AMERICA,         )
                    PLAINTIFF      )
                                   )     CASE NUMBER
vs.                                )     1:11-CR-0034-R
                                   )
DALLAS NORRIS,                     )
                    DEFENDANT      )
                                   )
_____ | |

REPLY MEMORANDUM
IN SUPPORT OF DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE

Defendant Dallas Norris, by Counsel, in reply to Plaintiff's Response to Defendant's motion to suppress the evidence, states that the motion is proper and the conduct of state police went beyond the law. For the reasons herein, Defendant's Motion should be sustained.

After STIPULATING in open Court that the areas searched by the troopers was protected curtilage, the Government, in it's brief, argues that, "The space fifteen to twenty feet from the multi-bay garage where Troopers White and Hodges smelled marijuana did not constitute protected curtilage where Norris had a reasonable expectation of privacy. In determining that a driveway accessible to the public was not curtilage, the Sixth Circuit held that curtilage is "not defined merely by location, but 'by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.'" This is patently false. Not only did the Assistant U.S. Attorney stipulate at the bench that the area was curtilage, the government's own witnesses testified that Mr. Norris had a gate at the entrance of his property, that there were "no trespassing" signs posted and that there was a fence in the rear, a

1

clear area all around the building in question and a driveway clearly beyond that intended for "public" traffic. Waiting until a gate is unintentionally left open, or happening upon it in that unusual condition, does not change the character of the property. The government's witnesses even testified that there was A GATE ALARM! To argue in the face of that fact, that Defendant did not expect privacy in the area around the building is just insane. His expectation was carefully protected and reasonable. Defendant attempted to obtain the testimony of Roger Goheen who would have testified to the usage of the property around the garage and the measures taken to protect the area and the wind direction and speed on the afternoon of the search, but was precluded by the risk of prosecution of the witness. This banter led to the stipulation that the area was curtilage.

     Next the government claims that ""law enforcement officials may encroach upon the curtilage of a home for the purpose of asking questions of the occupants." That may well be true, but these officers had already asked questions of one of the occupants of the farm, Shelly Goheen. They were searching to see whether there WERE additional occupants, not looking to ask questions of someone they knew was present! They had already contacted one occupant of the property and had been informed by that person, Shelly Goheen, of the fact that the owner, Dallas Norris, was away! The officers saw pickup trucks parked and went looking <u>in the hope of finding other persons and marijuana</u>, WITHOUT any necessary purpose!! Walking past the residence to search around the property when the owner is away is a search and nothing less than a violation of the owner's reasonable expectation of privacy! For the court to hold that police may search a man's curtilage for occupants without a search warrant and with NO EXIGENT CIRCUMSTANCE whatsoever, would eviscerate the protections of the 4th Amendments. This as not an open field. This was a man's home and garage!

The government points out that Defendant claimed that, "The assertion of having smelled it 15 feet to the southwest of the outbuilding is obviously false." To counter this assertion, the government points out that the weather measurements were taken at the airport some 50 miles away. Defendant stands by the assertion. The wind on the property was blowing in accordance with that weather report. ATF Agent Cruces testified in the probable cause hearing that it was windy and blowing so that there was difficulty in burning the marijuana to dispose of it. Likewise, one of the men arrested at the scene, Roger Goheen, also has asserted to counsel that the wind usually blows from the south end of the road-frontage to the east and that it was blowing that was on the afternoon he was arrested. Defendant attempted to obtain the testimony of Roger Goheen who would have testified concerning the wind, but because of the risk of prosecution, the court was reluctant to have him take the stand without counsel. The Court however, was willing to keep in mind the facts asserted by the Defendant and that Mr. Goheen's testimony would have supported Defendant's version of the facts. It is also true that the weather in the area that day was common knowledge and easily ascertained and the Government's witnesses did not contradict the weather facts asserted by Defendant and the Government did not assert ANY other set of conditions of the weather. There is no reason not to accept Defendant's version of the weather.

The government asserts that, "A gable vent is also visible on the western end of the garage above the awning in both Norris's Exhibit 2a and the United States' Exhibits 8 and 10, while the large front face of the garage has no similar ventilation. If the smell of over twelve hundred marijuana plants circulated inside the garage, it could escape through the vent on the western wall." This is a strange assertion in light of the complete lining of the building with black polyethylene plastic and metal ceiling panels! The East end of the roof also had a vent,

but what the government is not revealing to the court is that the entire ceiling on the garage was made of metal and entirely closed and the attic portion was isolated from the growing area. Little or no odor escaped from the growing area!  The growing area had its own <u>isolated air space</u> and isolated air conditioning unit.  The circulating fans moved the plants. THE CIRCULATING FANS DID NOT EXHAUST TO THE OUTSIDE!

It was impossible for very slight odor that would have leaked in to the attic to emanate from the EAST end of the building and blow UPWIND to the West end of the building and beyond, when the prevailing wind was out of the Southwest. The troopers may have smelled marijuana at the west end or rear of the building or perhaps within a few feet of that end, but it is not reasonable that they smelled it upwind from the building. Perhaps they later "remembered" their location slightly differently from the situation.  Clearly there was a memory problem in the officers that testified in the suppression hearing.  One "remembered" finding the two men at the west end of the building and the other "remembered" finding them at the north side of the building. The men reported to counsel that they were at the west end of the building when they heard and saw the officers approaching.

Finally, the Government asserts that chainsaws and pressure washers, lawn mowers, collectable coins and jewelry and a backhoe were somehow described in the search warrant. This is ludicrous. These things, the Government, may allege but have not, may have been purchased with proceeds of the grow operation, but there were in no way connected with it. It is unreasonable to seize everything of value in sight and allege that it "could have been" described in the search warrant. If that is the Government's argument, then is makes the case that the warrant was invalid for vagueness! Thus the Court is forced into the position of finding the warrant invalid for vagueness or finding that the seizure went the terms of the warrant.

The Constitution prevents the issuance of general warrants!  "Where the officers unlawfully seize certain items . . . the court must suppress the unlawfully seized items…" *Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984); cited in *United States v. Garcia*, 496 F.3d 495 (6th Cir. 08/08/2007)

## CONCLUSION

For the reasons set out herein, the Court should grant Defendant's Motion to Suppress the evidence seized by the Kentucky State Police as the only just remedy in this case for the violations of the rights of Defendant and of the law.

Respectfully Submitted,

/s Vincent F. Heuser, Jr.

_____

Vincent F. Heuser, Jr.
Attorney at Law
3600 Goldsmith Lane
Louisville, KY  40220
(502)  458-5879
*Counsel for Dallas Norris*

CERTIFICATE OF SERVICE

I hereby certify that this 7th day of April, 2012, the foregoing motion and attached order were served upon the Plaintiff by delivering a true copy thereof: [   ] to the United State Postal Service, first class postage pre-paid;  [√ ] by electronic mail; to:

[ √ ]  Hon. Mac Shannon, Asst. U.S. Attorney Office, 510 W. Broadway , Louisville, KY 40202

/s Vincent F. Heuser, Jr.

_____
Vincent F. Heuser, Jr.